<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 19-686 (KSH) |
| v. | |
| ELHADJ FOFANA,  *Defendant*. | **OPINION** |

**I.   Background**

Defendant Elhadj Fofana is serving a 36-month sentence for offenses arising from his role in a scheme that involved the fraudulent use of credit cards and checks intercepted from the mail, which were obtained through bribes to various postal workers. Following his guilty plea to a two-count information charging him with bank fraud in violation of 18 U.S.C. § 1344 (count 1) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (count 2), Fofana was sentenced on February 11, 2020, to 12 months on count 1 and 24 months on count 2, which, as required, runs consecutively. (D.E. 47, Judgment.) He was also ordered to pay restitution of $114,680.15. (*Id.*)

Approximately four months after he self-surrendered on February 18, 2020 to begin serving his sentence, Fofana, represented by the Office of the Federal Public Defender, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He sought release to home confinement based on the COVID-19 pandemic and his medical condition, *i.e.*, sickle cell disease. (D.E. 50.) At that time, he was incarcerated at Essex County Correctional Facility, having not yet been designated to a Bureau of Prisons facility. (*Id.* at 3.) The government opposed, pointing out that he was on state probation when he committed the federal offenses and had on multiple occasions violated his bail conditions while on pretrial release. (D.E. 51.) The government also contended

1

that the Court was without authority to direct the BOP to release Fofana to home confinement, and that the application also failed on its merits. Notably, the government's opposition indicated that Fofana was awaiting transfer to Federal Medical Center (FMC) Devens. (*Id.* at 1, 4.) Following additional submissions and after hearing oral argument on two separate days, the Court denied Fofana's motion without prejudice based on his by-then completed transfer to FMC Devens and the absence of any information with respect to any applications for relief that he may have made to the BOP following his transfer. (*See* D.E. 63.)[1]

Fofana subsequently filed a *pro se* letter requesting the appointment of counsel, or, alternatively, compassionate release under 18 U.S.C. § 3582(c)(1)(A). (D.E. 64.) The Court, construing the letter as a renewed request for compassionate release, directed the Office of the Federal Public Defender to confirm whether it continued to represent Fofana (D.E. 65), which it did the following day (D.E. 66). Fofana thereafter filed a counseled motion seeking compassionate release, in which he noted his efforts to exhaust his administrative remedies and stressed the risks posed by his sickle cell disease and the high infection rate at FMC Devens, framing them as extraordinary and compelling reasons for the relief sought. (D.E. 68.) The motion also revealed that Fofana had contracted COVID-19 in December 2020, having tested for the virus during a hospital admission for a sickle cell crisis and acute chest syndrome. (*Id.* at 2-3.)[2] Fofana further argued that he presented no danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g) and that the sentencing factors under 18 U.S.C. § 3553(a) favor release. With respect to a release plan, Fofana proposed to live with his sister in her apartment under a condition

---

[1] Fofana had also failed to provide additional information on his proposed release plan beyond the limited references in his moving brief. (*See id.*)
[2] In a supplemental letter, Fofana stated that he had been told that the virus had likely triggered his sickle cell crisis. He also stated that half of the 120 inmates in his housing unit had tested positive, with several deaths. (D.E. 69.)

2

of home incarceration.

The government continued to oppose relief, arguing that Fofana failed to demonstrate that FMC Devens could not provide appropriate medical care and that the § 3553(a) factors favor denial of the motion. (D.E. 70.) In particular, the government pointed to Fofana's noncompliance with the conditions of his pretrial release and multiple disciplinary infractions since his transfer to FMC Devens in mid-July 2020.[3]

The Court heard oral argument on March 8, 2021. The defense argued that in light of Fofana's medical condition and the number of inmates at FMC Devens who had contracted the virus, it would be appropriate for the Court to impose a special term of supervised release for the remainder of the sentence.[4] The defense acknowledged Fofana's noncompliance with certain of the bail conditions imposed on him and his disciplinary infractions at FMC Devens, but argued he had showed up for his court appearances and self-surrendered to begin his sentence and that the disciplinary infractions were non-violent.

The government countered that Fofana had only served about one-third of his 36-month sentence and that although his sickle cell disease qualified as an extraordinary and compelling reason for compassionate release, FMC Devens remained equipped to appropriately care for him, even in the rare event of reinfection with COVID-19. With respect to the § 3553(a) factors, the government argued that Fofana had repeatedly failed to follow requirements, whether set by the court or other authorities—violations that included meeting up with his co-conspirator in the scheme that gave rise to this sentence—and that the defense's proposal of granting supervised

---

[3] The government also initially opposed relief on the ground that Fofana had failed to exhaust his administrative remedies but later withdrew that argument. (*See* D.E. 72.)

[4] The defense estimated that this relief would result in a seven- to thirteen-month reduction in the custodial portion of Fofana's sentence, based upon when the BOP typically permits inmates to be released to home confinement or home detention.

3

release with a condition of home detention would be particularly inappropriate here given that history. The government also pointed out that if Fofana were released on supervised release and violated the conditions of that release, he would not return directly to FMC Devens, but likely to ECCF, a scenario that would not minimize his health risk or the risk to others. Moreover, the government asserted that granting relief would result in Fofana serving a sentence of approximately one year, which would subvert the original sentence's reflection of the seriousness of his offense, his history and characteristics, respect for the law, general deterrence, and just punishment. It would, the government continued, result in an unwarranted sentencing disparity between Fofana's punishment and the sentences imposed on the other participants in the conspiracy. The government also noted that one of Fofana's offense of conviction, for aggravated identity theft, carried a two-year mandatory minimum running consecutive to the other count, and granting relief would effectively mean that Fofana would not serve any of that mandatory term. While not framing the issue as constraining the Court's authority, the government suggested that that result would further undermine the reasoning for the original sentence.

In a follow up submission, the defense informed the Court that Fofana had declined a COVID-19 vaccination in early February, in anticipation of asking his doctor whether it would be medically appropriate to receive the vaccine. (D.E. 74.) The defense represented that having subsequently spoken to the doctor, Fofana had agreed to receive the vaccine. (*Id.*) The government also filed a supplemental submission, arguing that Fofana's proposed release plan remained insufficient, particularly with respect to the issue of medical care; that the matter of whether Fofana was vaccinated remained open; that Fofana had served too little of his original sentence to warrant relief; and that if the Court granted relief and imposed a special term of supervised release, it should also impose a condition of home confinement and require Fofana to

4

be medically cleared by FMC Devens and quarantine for 14 days prior to release, with the Court retaining jurisdiction over the instant motion during that time. (D.E. 75.)

**II.     Legal Standard**

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797-98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)); *see also United States v. Dillon*, 560 U.S. 817, 824 (2010) (same). Relevant here, 18 U.S.C. § 3582(c)(1) provides as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The United States Sentencing Commission's policy statement permits a court to reduce a term of imprisonment under § 3582(c)(1)(A) where extraordinary and compelling reasons warrant the reduction, the defendant is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g), and release would comport with consideration of the § 3553(a) factors. U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 (U.S. Sent'g Comm'n 2018); *accord United States v. Williams*, 2021 WL 37536, at *2 (D.N.J. Jan. 4, 2021) (McNulty, J.) (summarizing requirements for compassionate release under § 3582(c)(1)(A)).

### III.  Discussion

#### A. Administrative Exhaustion

As the Third Circuit has explained, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**." *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Fofana's renewed motion was accompanied by an October 1, 2020 request addressed to the warden of FMC Devens seeking compassionate release, which he represented he had gotten no response to. (*See* D.E. 64, at 2; D.E. 64-1.) Although the government initially challenged whether this request was properly made (D.E. 70, at 2-3), it now represents that the BOP informed it that Fofana's request to the warden had been denied. (D.E. 72.) Based on this representation, the Court is satisfied that motion is properly before it for decision.

#### B. Substantive Standards for Compassionate Release

##### 1. Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to define the meaning of the statutory term "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). The application notes to the Sentencing Commission's relevant policy statement provide that extraordinary circumstances exist in specified circumstances involving the defendant's medical condition, age, or family circumstances. USSG § 1B1.13, Application Note 1(A)-(C). Here, Fofana has invoked a medical condition, namely sickle cell disease, as the basis for his request. A medical condition may give rise to extraordinary and compelling reasons where the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, Application Note 1(A)(ii). The application notes include a catchall provision, which Fofana also cites. *See id.* at Application Note 1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

Although this policy statement has not been updated since the passage of the First Step Act and, as such, addresses compassionate release motions brought by the BOP rather than by the defendant personally, it supplies "useful guidance" in determining a defendant's eligibility for such relief while not constraining the Court's "independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Alexander*, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020) (Wolfson, J.) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. Apr. 1, 2020) (internal quotation marks omitted)). As a practical matter, courts in this district evaluate the record evidence of a moving defendant's medical conditions, with a focus on whether those conditions impose an increased risk of severe illness should the defendant contract the virus, and the likelihood of COVID-19 infection or reinfection at the institution of incarceration. *See, e.g.*, *United States v. Welton*, 2021 WL 2210604, at *1 (D.N.J. June 1, 2021) (Vazquez, J.); *Williams*, 2021 WL 37536, at *3-7; *United States v. Moore*, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020) (McNulty, J.).

As noted earlier, Fofana suffers from sickle cell disease, which the CDC recognizes as a condition that can make it more likely for a person to become severely ill from COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (page last updated May 13, 2021) (last visited June 14, 2021). "Severe illness" from COVID-19, as indicated by the CDC, may result in hospitalization, intensive care, ventilation, or death. *Id.* Courts, including in this district, have looked to the CDC's classifications to inform their assessment of whether a defendant has shown extraordinary and compelling reasons for compassionate release based on COVID-19. *See, e.g.*, *Williams*, 2021 WL 37536, at *4; *United States v. Lanton*, 2021 WL 1978554, at *3-4 (E.D. Mich. May 17, 2021). And with respect to Fofana's specific condition, courts have recognized blood disorders, including sickle cell disease, as presenting an increased risk of severe illness from COVID-19. *See, e.g.*, *United States v. Spivey*, 471 F. Supp. 3d 621, 623-24 (E.D. Pa. 2020) (recognizing that while sickle cell disease may present an extraordinary and compelling circumstance, compassionate release from FMC Devens was not warranted under 18 U.S.C. § 3553(a)).

Here, Fofana's fear of contracting COVID-19 did come to pass, and in December 2020 he required hospitalization, albeit not because his existing medical condition resulted in more severe symptoms of COVID-19 but because the virus triggered a sickle cell crisis and acute chest syndrome. (D.E. 68-1, at 9, 13, 130, 158.) However, the medical records submitted to the Court indicate that following his two-day hospitalization and treatment for the sickle cell crisis, Fofana returned to FMC Devens and told medical staff the next day that he was feeling "well." (*Id.* at 1.) There is no indication in the record before the Court that he has had ongoing symptoms, and it appears that Fofana's condition has been closely and frequently monitored.

8

Fofana expresses concerns about the prospect of reinfection. Reinfection is presently thought to be rare. *See* CDC, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (page last updated October 27, 2020) (last visited June 14, 2021). *See also Welton*, 2021 WL 2210604, at *1. Additionally, Fofana has been offered vaccination and, while he initially refused, he more recently indicated that he intended to receive it. (D.E. 74, at 2.)

The other major variable in the Court's analysis is, as noted earlier, the conditions at the defendant's institution of incarceration. Here, the picture at FMC Devens has improved markedly: although BOP reports that 366 inmates and 63 staff have recovered from COVID-19 and 11 inmates died at the institution – indicating a significant outbreak – FMC Devens is currently reporting no inmate or staff cases. *See* BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 14, 2021). Moreover, 349 staff members and 593 inmates have been fully vaccinated. BOP, COVID-19 Vaccination Implementation, https://www.bop.gov/coronavirus/ (last visited June 14, 2021). Significantly, FMC Devens is a medical center, and Fofana was specifically designated there because of his medical condition.

### 2. Section 3553(a) Factors and Dangerousness

Even assuming that Fofana has demonstrated the existence of an extraordinary and compelling reason for the relief sought, the Court nevertheless cannot conclude that a reduction in sentence is appropriate. Under § 3582(c)(1)(A), the Court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to the extent applicable, *see United States v. Pawlowski*, 967 F.3d 327, 329-31 (3d Cir. 2020), and whether the defendant would be a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g).

Under § 3553(a), the sentence must be sufficient, but not greater than necessary, to further the purposes of sentencing, *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(D). Additionally, the Court takes into account, *inter alia*, the nature and circumstances of the offense, the defendant's history and characteristics, and the need to avoid unwarranted sentence disparities. *Id.* § 3553(a)(1), (6). Evaluating dangerousness under 18 U.S.C. § 3142(g) also involves, in relevant part, assessing the nature and circumstances of the offense, the defendant's history, and the "nature and seriousness of the danger to any person or the community" that would be posed by his release.

The record shows that Fofana repeatedly violated the terms imposed on him as conditions of pretrial release. When he was placed on home detention with location monitoring, he left without authorization several times, once to meet a co-conspirator in the underlying scheme, resulting in the imposition of home incarceration. His bail conditions were later modified to again permit home detention with location monitoring, and upon his entry of a plea—a proceeding that did not proceed as originally scheduled because Fofana refused to take a drug test—he was ordered to participate in cognitive behavioral therapy and a substance abuse treatment program to lift the condition of home detention with location monitoring. He stopped going to both programs. He also had multiple positive drug tests before he began his custodial term. Fofana was on state probation when he committed his federal crimes. Records from FMC Devens indicate he has incurred disciplinary infractions during his first months there.

Relevant to both § 3553(a) and § 3142(g), these facts evidence Fofana's repeated failures to conform his conduct to the requirements of supervision. *See United States v. Pierce*, 2020 WL 6867165, at *3 (D.N.J. Nov. 23, 2020) (Hillman, J.) (in denying relief, observing that defendant's "history is replete with violations while on probation or supervised release," and his "prison disciplinary record is poor"). His release plan as described in his attorney's submission on his renewed petition (D.E. 68) shows that his sister, who is employed and attending college, will be the sole family member to provide financial, emotional, and day-to-day structure. The proposed situation does not materially address or improve the medical risks that prompted his application for early release.

Moreover, Fofana reported that he has suffered from sickle cell anemia since the age of six. (PSR ¶ 148.) This did not prevent him from participating in a deliberately conceived and executed conspiracy whereby credit cards stolen from the mails were activated and used by Fofana and others to make unauthorized retail purchases of, among other things, Apple products. Fofana's charged activities took place between June 2017 and February 2018 and the losses attributed directly to him amounted to $114,680.51. (*Id.* ¶¶ 86, 28.) While afflicted with his medical condition, Fofana regularly challenged the professionals tasked with his pretrial supervision, and his infractions after entering BOP custody continue that pattern. His application for early release amply demonstrates that he suffers from a serious chronic condition, but it has not interfered with his criminal activities.

Fofana's sentence also bears examination in this context. His plea agreement (D.E. 39) specified that he was permitted to argue for a variance from the agreed-upon adjusted offense level of 14 as to count 1, bank fraud. He was successful and the Court sentenced him to 12 months. Significantly and per the plea agreement, his total sentence of 36 months was imposed

recognizing that his crimes required a consecutive, mandatory two-year sentencing enhancement. He has not yet served half of that sentence, and his conduct shows that supervised release will be a significant and necessary feature of his sentence. Looking at this case as a whole, the Court must conclude that while Fofana has shown a serious medical condition, he has been treated for it, he is in a setting where his medical needs can be addressed, and there is a need for punishment and an orderly transition into supervised release. Under those circumstances, his application for a reduction in sentence on compassionate release grounds is denied.

## IV.  Conclusion

For the reasons set forth above, Fofana's motion is denied. An appropriate order will issue.


Dated:  June 14, 2021                                /s/ Katharine S. Hayden
                                                     Katharine S. Hayden, U.S.D.J.